## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:

Andrew P. Keaton, III and                    Case No.: 8:10-bk-07891-KRM
Theresa Keaton                               Chapter: 11

      Debtors.

_____/

## PLAN OF REORGANIZATION

The Debtors propose a Plan of Reorganization that would divide their creditors into six (6) classes.  The Debtors intend to fund their proposed Plan of Reorganization from the salary and distributions generated from the Debtors' businesses. The Debtors intend to determine the Secured Status of the Bank of America and Branch Bank and Trust mortgages and to strip their respective liens off the Debtors' homestead, based on the value of the collateral. The Debtors intend to continue to pay the first mortgage of Wells Fargo Home Mortgage pursuant to the contractual terms. The Debtors then propose to pay Bank of America the secured value (homestead plus secured personal property) of their claim over fifteen (15) years at five (5%) percent interest. The unsecured portion of the Bank of America claim will then be treated as an unsecured claim, and accorded the same treatment as other unsecured creditors. Likewise, the Debtors believe that after the Motion to Determine Secured Status of the BB & T mortgage is considered by the Bankruptcy Court, it will be determined to be completely unsecured, and therefore, will also be treated as an unsecured claim. The Debtors then propose a "pot plan" to pay unsecured creditors on a pro rata basis, and will contribute all net disposable income above living and healthcare expenses over the next sixty months to fund the proposed Plan of Reorganization.

## A.  CLASSIFICATION OF CLAIMS

The Debtors propose a plan which divides claims and interest into six classes. The proposed classes are as follows:

**Administrative claims and expenses:**

The Debtor shall pay all administrative claims and expenses upon confirmation of the Debtor's Plan of Reorganization, or as otherwise agreed between the parties involved.

**Class I:**     (Statutory Treatment) Proven and allowed priority claim of the Internal Revenue Service for 2009 1040 income taxes.

**Class II:**    (Statutory Treatment) Proven and allowed priority claim of the State of Florida Department of Revenue for sales and use tax.

**Class III:**   (Unimpaired) Proven and allowed claim of Wells Fargo Home Mortgage secured by the Debtors' homestead property.

**Class IV:**    (Impaired) Proven and allowed claim of Bank of America secured by the Debtors' homestead property, an Assignment of Rents, and the Debtors' personal property.

**Class V:**     (Impaired) Proven and allowed claim of Branch Bank & Trust secured by the Debtors' homestead property.

**Class VI:**    (Impaired) Proven and allowed unsecured claims.

**B. TREATMENT OF CLAIMS**

The Debtors propose to fund their Plan of Reorganization from the salary and distributions generated from the Debtors' businesses. The Debtor proposes to pay each class of creditor as set forth below:

**Administrative Expenses:** The Debtors shall pay administrative claims and expenses in full at confirmation or as otherwise agreed upon between the involved parties.

**Class I:** (Statutory Treatment) Class I consists of the proven and allowed priority claim of the Internal Revenue Service for 2009 1040 income taxes. This creditor has filed an estimated proof of claim in the amount of $6,600.00. The Debtors had obtained an extension to file their 2009 income taxes, and do not believe they are indebted to this creditor in the amount claimed. Accordingly, the Debtors reserve the right to object to this claim in the event that their 2009 tax return reflects a lower amount due. The Debtors propose to pay the proven and allowed claim of this creditor an interest rate pursuant to 26 U.S.C. §6625 upon confirmation, and will commence payments to this creditor within 30 days of the determination of this creditor's allowed claim. The Debtor proposes to pay this creditor's allowed claim plus statutory interest by allocating all net disposable income above living and healthcare expenses until this claim is paid in full.  It is estimated that this creditor shall be paid in full within nine (9) months after the entry of an Order allowing claim.

**Class II:** (Statutory Treatment) Class II consists of the proven and allowed priority claim of The Florida Department of Revenue.  This creditor has filed an estimated proof of claim in the amount of $111.74.  The Debtors are unsure of the basis from which this creditor's claim arises, and accordingly, reserve the right to object to this claim. The Debtors propose to pay the proven and allowed claim of this creditor an interest rate pursuant to 26 U.S.C. §6625 upon confirmation, and will commence payments to this Creditor within 30 days of the satisfaction of the Class I allowed claim. It is estimated that this Creditor shall be paid in full within nine (9) months after the entry of an Order allowing claim, and no more than one (1) month after the payment of the Class I claim.

**Class III:**  (Unimpaired) The Class III creditor consists of the proven and allowed claim of Wells Fargo Home Mortgage, which has a first secured position mortgage on the Debtors' homestead in the approximate amount of $123,558.60. The Debtors are current pre and post-petition on this obligation.  The Debtors intend to continue to pay the first mortgage of Wells Fargo Home Mortgage pursuant to the contractual terms of the underlying promissory note until this obligation is paid in full. This creditor will retain its security interest to the same validity, extent and priority it enjoyed pre-petition.

**Class IV:**   (Impaired) The Class IV creditor consists of the proven and allowed claim of Bank of America which has a second secured position mortgage on the Debtors' homestead property, and is further secured by an Assignment of Rents, and a lien on the Debtors' personal property in the approximate total amount of $151,892.73. The Debtors intend to file a Motion to Determine Secured Status to determine the secured portion of this creditor's claim. The Debtors believe that the value of the homestead is $220,000.00, and that it is subject to the $123,558.60 first mortgage held by Wells Fargo Home Mortgage. Accordingly, the Debtors believe that the secured claim of this creditor is $96,441.40 plus the value of the Debtors' personal property, estimated to be $2,870.00, for a total secured claim of $99,311.40. The Debtors will amortize the secured portion of the allowed claim over 15 years at five (5%) percent interest. The Debtors then estimate that this creditor will be entitled to an unsecured claim of $52,581.33, which will be treated in the same manner as other Class VI unsecured creditors. This creditor will retain its security interest on the secured portion of its allowed claim to the same validity, extent and priority it enjoyed pre-petition.

**Class V:** (Impaired) The Class V  creditor consists of the proven and allowed claim of Branch Bank & Trust which has a third secured position mortgage on the Debtors' homestead

property in the approximate total amount of $714,343.06. The Debtors have filed a Motion to Determine Secured Status to determine the secured portion of this creditor's claim. The Debtors believe that the value of the homestead is $220,000.00, and that it is subject to the $123,558.60 first mortgage held by Wells Fargo Home Mortgage, and that any remaining equity will be consumed by the second mortgage held by Bank of America. Accordingly, the Debtors believe that the entire allowed claim of this creditor will be unsecured in the approximate amount of $714,343.06 which will be treated in the same manner as other Class VI creditors.

**Class VI:** (Impaired) Class VI creditors consist of holders of proven and allowed unsecured claims. It is estimated that there are unsecured claims totaling approximately $247,937.11 plus the estimated $52,581.33 unsecured portion of the Bank of America claim plus the $714,343.06 portion of the BB & T claim, for total unsecured claims of $1,977,141.40. Upon the retirement of Class I and Class II claims (estimated to be within ten (10) month's of the entry of an Order allowing claims), the Debtors propose to contribute all net disposable income above living and healthcare expenses over sixty (60) months to fund the proposed Plan of Reorganization for Class I, Class II and Class VI creditors. This "pot plan" will pay unsecured creditors on a pro rata basis after the payment of the above described priority claims. If all unsecured claims are proven and allowed, at current income levels, it is estimated that unsecured creditors will receive a four (4%) percent distribution on their unsecured claims. To the extent that Bay Sign, Fastpost and/or Global exceed current performance levels, the Debtors will contribute any additional distributions they receive (over and above household living and healthcare expenses) to the funding of their proposed Plan of Reorganization.

**C. ALTERNATIVES TO BANKRUPTCY**

The Debtors propose to fund their Plan of Reorganization from the salary and distributions generated from the Debtors' businesses. Were the Debtors to convert their case to a chapter 7 liquidation, the Debtors' non-exempt assets would total less than $1,000.00, and it is unlikely that any creditors would receive any distribution on their unsecured claims, since all assets would be subsumed by administrative expenses and priority claims. Therefore, it appears that it is in the best interests of all parties to allow the Debtors to attempt their repayment plan by confirming the Debtors' proposed Plan of Reorganization.

### D.  STATEMENT REGARDING EXECUTORY CONTRACTS

The Debtors hereby assume any executory contract not specifically deemed rejected during these proceedings or herein.

### E.    DISCHARGE, RELEASE, LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

#### Discharge of Claims

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Discharge Order shall operate as a discharge, pursuant to Bankruptcy Code § 1141(d), to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against the Debtors that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtors and the Reorganized Debtors shall be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), whether or not (a) a Proof of Claim based on such Debt was filed pursuant to

Bankruptcy Code § 501, (b) a Claim based on such Debt is an Allowed Claim pursuant to Bankruptcy Code § 502, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtors and the Reorganized Debtors or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies or Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Discharge Order shall be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtors, pursuant to Bankruptcy Code §§ 524 and 1141, and such discharge shall void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Notwithstanding the foregoing, if under the Plan, the Reorganized Debtors is obligated to make payments to Holders of Allowed Claims, the Reorganized Debtors shall remain obligated to make such payments.

Holders of Administrative Expense Claims (including holders of any claims for postpetition Federal State or Local taxes) that do not file an application or other Bankruptcy Court approved pleading by the administrative expense claims bar date shall be forever barred from asserts such

administrative expense claims against the Debtors, the Reorganized Debtors, or any of their respective Properties.

## General Injunction

Pursuant to Bankruptcy Code §§ 105, 1123, 1129, and 1141, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim or other Debt, Liability, or Equity Interest that is discharged pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, Debts or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtor, or their respective Properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtor, or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtor, or their respective Properties; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any Debt, Liability, or obligation due to the Debtors or the Reorganized Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The Debtors and the Reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

**Term of Certain Injunctions, the Automatic Stay, and the Estate**

All injunctions or automatic stays provided for in these Reorganizations pursuant to Bankruptcy Code §§ 105 or 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

## F.  RETENTION OF JURISDICTION

### General Retention

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until this Reorganization is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of this Reorganization that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

### Specific Purposes

In addition to the general retention of jurisdiction set forth in Article 11.1, after Confirmation of the Plan and until these Reorganizations are closed, the Bankruptcy Court shall retain jurisdiction of these Reorganizations for the following specific purposes:

   a.      to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolutionof any application for an Administrative Expense, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

b.      to determine any and all cases, controversies, suits, or disputes arising under or

relating to the Plan or the Confirmation Order (including regarding the effect of any

release, discharge, or injunction provisions provided for herein or affected hereby

and regarding whether conditions to the consummation and/or Effective Date of the

Plan have been satisfied) and to enforce the obligations under the Plan;

c.      to determine any and all applications for allowance of compensation of Professionals

and reimbursement of expenses under Bankruptcy Code §§ 330, 331 or 503(b)

arising out of or relating to this Reorganization; provided, however, that this

retention of jurisdiction shall not require prior Bankruptcy Court approval of the

payment of fees and reimbursement of expenses of Professionals after Confirmation

of the Plan unless an objection to such fees and expenses has been made by the

Debtors or the Reorganized Debtor;

d.      to determine any and all motions pending as of the date of the Confirmation Hearing

(including pursuant to the Plan) for the rejection, assumption or assignment of

executory contracts or unexpired leases to which the Debtors is a party or with

respect to which the Debtors may be liable (including assumed contracts), and to

determine the allowance of any Claims resulting from the rejection thereof or any

amount necessary to cure defaults in any assumed and/or assigned executory

contracts or unexpired leases (including assumed contracts), including Cure Claims;

e.      to determine any and all motions, applications, adversary proceedings, contested or

litigated matters, Causes of Action, and any other matters involving the Debtors or

the Reorganized Debtor, whether commenced in connection with or arising during

the Reorganization Case and pending on the Effective date including approval of proposed settlements thereof.

f.    to enforce, interpret, and administer the terms and provisions of the Plan and the Plan Documents;

g.    to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedures;

h.    to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtors or the Estate;

i.    To resolve any disputes concerning any release of a non-debtor hereunder or the injunction against acts employment of process or actions against such non-debtor arising hereunder.

j.    to assure the performance by the Reorganized Debtor of its obligations to make distributions under the Plan;

k.    to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided in the Plan, so that the intended effect of the Plan may be substantially realized thereby;

l.    to enforce all orders, judgments, injunctions, and rulings entered in connection with these Reorganizations;

m.     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

n.     to review and approve any sale or transfer of assets or Property by the Debtors or the Reorganized Debtor, including prior to or after the date of the Plan, and determine all questions and disputes regarding such sales or transfers;

o.     to determine all questions and disputes regarding title to the assets of the Debtors, their Estates, or the Reorganized Debtor;

p.     to determine any motions, adversary proceedings, or contested matters relating to the Causes of Action, whether brought before or after the Effective Date, including to enter any declaratory judgments or injunctions pursuant to Article 8 of the Plan;

q.     to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

r.     to resolve any determinations which may be requested by the Debtors or the Reorganized Debtors of any unpaid or potential tax liability or any matters relating to such liability under Bankruptcy Code §§ 505 and 1146(d), including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

s.      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

t.      to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

u.      to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Documents;

v.      to enter such orders as are necessary to implement and enforce the injunctions described herein;

w.      to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

x.      to enter a Final Decree and other orders as may be necessary to conclude the Reorganization Case.

## **Closing of the Reorganization**

In addition to the retention of jurisdiction set forth in Articles 11.1 and 11.2, the Bankruptcy Court shall retain jurisdiction this Reorganization to enter an order reopening this Reorganization after it has been closed.

## G.  MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

### Modification of Plan

The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. The Plan may not be altered, amended or modified without the written consent of the Debtors or the Reorganized Debtor.

After the entry of the Confirmation Order, the Debtors or the Reorganized Debtor (as the case may be) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtors or the Reorganized Debtor (as the case may be) obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (b) such modification shall not materially adversely affect the interests, rights, treatment, or distributions of any Class of Allowed Claim or Allowed Equity Interest under the Plan.

After the Confirmation Date and before substantial consummation of the Plan, the Debtors or the Reorganized Debtor (as the case may be) may modify the Plan in a way that materially adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtors or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtors or the

Reorganized Debtor (as the case may be) comply with Bankruptcy Code § 1125 with respect to the Plan, as modified.

In the event any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Section 14.2, the Debtors hereby request, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Bankruptcy Code §1129(b)(2)(B), or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Bankruptcy Code § 1129(b). The Debtors may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtors reserve any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

### G.  MISCELLANEOUS PROVISIONS

#### No Admissions

The Plan provides for the resolution, settlement, and compromise of Claims against and Equity Interests in the Debtors. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtors in any manner prior to the Effective Date.

## Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Hearing. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtors or any other Person, or (b) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

## Settlement of Claims

The Reorganized Debtors, as applicable, (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or Cause of Action which the Debtors-in-Possession have or had power to assert immediately prior to the Confirmation Date, and (b) may settle or adjust such claim or Cause of Action.

## Standard for Approval of the Bankruptcy Court

In the event any of the matters described in the Plan are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by Chapter 11 Debtors-in-possession.

## Further Assurances

The Debtors or the Reorganized Debtor (as the case may be) agree and are authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

### Headings

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

### Notices

All notices, requests, or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

If to the Debtors or the Reorganized Debtor:

> Andrew P. Keaton, III and Theresa Keaton
> 1325 Caladesi Drive
> Wesley Chapel, Florida 33544

with a mandatory copy to:

> Joel S. Treuhaft, Esq.
> 2997 Alternate 19, Suite B
> Palm Harbor, Florida 34683

Copies of all notices under the Plan to any party shall be given to the Debtors and the Reorganized Debtor contemporaneously with the giving of notice to such party.

Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

### Governing Law

Except to the extent that federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure) is applicable, or to the extent that the Plan or the provision of any

contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**Limitation on Allowance**

No attorneys' fees, punitive damages, penalties, special damages, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**Estimated Claims**

To the extent any Claim is estimated for any purpose, other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**Consent to Jurisdiction**

Upon any default under the Plan, the Debtors and the Reorganized Debtor consent to the jurisdiction of the Bankruptcy Court, or any successor to the Bankruptcy Court, and agree that all shall be the preferred forum for all proceedings relating to any such default. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim, by voting on the Plan, or by entering an appearance in this Reorganization, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or these Reorganizations, including the matters and purposes set forth

in the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the Plan.

## Setoffs

Subject to the limitations provided in Bankruptcy Code § 553, the Debtors may, but shall not be required to, set-off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such Holder.

## Successors and Assigns

The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

## No Interest

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Post-petition interest, penalties or late charges on account of such Claim for any purpose.

## Modification of Payment Terms

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Bankruptcy Code § 1127(e).

## Entire Agreement

The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

## Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, however, that any materially altered provision affecting the rights of the Existing Shareholders must be agreed to by such Existing Shareholders. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Parties – Binding Effect

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, including but not limited to all Holders of Claims and Equity Interests, employees,

third-party beneficiaries, shareholders, Governmental Authorities, parties to executory contracts and unexpired leases, in whatever capacity, and their respective officers, agents, successors, assigns, servants, employees, attorneys and any party in active concert or participation with the foregoing. Receipt of the Plan and Disclosure Statement shall be deemed sufficient notice of the content and effect thereon to bind all of the foregoing in whatever capacity, and their respective officers, agents, successors, assigns, servants, employees, attorneys and any party in active concert or participation with the foregoing. Any of the foregoing persons that fails to timely object to Confirmation of the Plan, or who does so object but has such objection overruled by the Bankruptcy Court, shall be deemed to consent to and shall be bound by the terms of the Plan as confirmed by the Bankruptcy Court.

### Confirmation Order and Plan Control

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtors and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (any and other orders of the Court) shall be construed together and consistent with the terms of the Plan. If the description in the Plan of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the Plan will control.

### Professionals and Closing Costs

Following the entry of the Confirmation Order, the Reorganized Debtor may retain and compensate any and all Professionals that may be necessary in the exercise of the Reorganized Debtor's business judgment without the necessity of further retention or fee applications. Furthermore, after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of

business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of Professionals employed by the Reorganized Debtor in connection with the implementation and consummation of the Plan, the Claims reconciliation process, and any other matter involving these Reorganizations. Furthermore, the Reorganized Debtor may retain and compensate any attorney, accountant, or other Professional needed in connection with the sale and closing of any security issuance, loan or transfer of Property.

### Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### XII. CONCLUSION

The Plan of Reorganization proposed by the Debtors provides the best means by which all creditors get paid a distribution on their claims in a reasonable period of time.  The Debtors propose to value the claims of the junior lien holders on their homestead through its Plan of Reorganization, and to pay priority and unsecured creditors all disposable income after the payment of household living and healthcare expenses. A Chapter 7 liquidation of the Debtors assets is unlikely to result in any distribution to creditors.

Therefore, it appears to be in the best interests of all creditors, the Debtor, and the bankruptcy estate to confirm the Debtors' proposed Plan of Reorganization.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished this

_2nd_ day of August, 2010 to: All participants in the ECF/CM noticung program, and the U. S.

Trustee, 501 E. Polk Street, Suite 1200, Tampa, Florida 33602.


                                    /s/ Joel S. Treuhaft
                                    Joel S. Treuhaft, Esq.
                                    2997 Alternate 19, Suite B
                                    Palm Harbor, Florida 34683
                                    (727) 797-7799
                                    Facsimile: (727) 213-6933
                                    FBN: 516929